Congress. May it please the court. My name is Robert Kern. I'll be representing Appellant Julie Clemens. I'd like to set aside three minutes for rebuttal, and I'll watch my own clock. This case arises from a car accident that happened in Las Vegas in 2015. While driving for the U.S. Army, Sergeant Marcus Brandt drove a 15-passenger van into Julie Clemens' stopped vehicle, going about 45 miles an hour. The impact was such that the vehicle was deemed a total loss, and firefighters on the scene had commented they expected a fatality after looking at the vehicle. Brandt's liability and that of the United States as his employer is undisputed. Ms. Clemens disclosed her treating neuroradiologist, Dr. Travis Snyder, as a witness more than two years prior to trial. And in the joint pretrial order, both Clemens and the United States listed Dr. Snyder in the witness list. However, at trial, the court refused to allow Dr. Snyder to testify based on its belief that he was required to issue an expert report. The court further refused an offer of proof. After the bench trial, the court found that Clemens had suffered pain and injury as a result of the accident, but still awarded zero disputed damages despite undisputed liability. They awarded nothing beyond the $4,320 admitted by the government, and that is just medical bills. For brevity going forward, I'm just going to refer to this as a zero award. The FFCL, or findings of fact, indicated that the court had excluded damages for all subjective injuries and all pain and suffering as a matter of law. So this case presents two substantive errors, as well as a request for reassignment on remand. The first error is the exclusion of a treating physician for not issuing an expert report. The second error is the exclusion of all subjective damages and all pain and suffering damages as a matter of law. So maybe starting with the exclusion of Dr. Snyder, as I understood what the district court was saying, it wasn't that Dr. Snyder couldn't testify at all. It was that he could testify as a treating physician, but only about what was within the scope of his treatment. And you were seeking to have him testify. I mean, he treated, I believe it was her, I forget whether it was left or right, but he treated a shoulder, and you were seeking to have him testify about the brain scans, the traumatic brain injury, and causation of the injuries, which were outside of the scope of what he treated. So why was the district court wrong about that? Sure. With respect, Your Honor, that's not what's in the record. The fact is that the scope of Dr. Snyder's testimony, the scope of his treatment, was never determined. It would have been if we had been able to make an offer of proof. We would have been able to put that on the record. But there simply wasn't anything. The only commentary on the record was us saying that he was going to stay in his scope and attorney for the United States arguing that his scope was going to be limited to examining one image based on her shoulder. But that's not, but that was never established. There's no evidence that was ever taken on that. They never allowed the doctor to come in and testify as to what the scope of his treatment was. So we here on appeal. We agree that there's nothing in the record that specifically indicates that Dr. Snyder reviewed or in any other way treated your client for the TBI or reviewed the brain scan. So what you're saying is that there's just silence on this issue, and that is enough to be able to establish that he might have potentially testified on these topics. Because the way I'm looking at the record sites and in the supplemental disclosure, Dr. Snyder's only listed as reviewing her 2018 left shoulder injury and then lists another doctor, Dr. William Orison, as reviewing the MRI. And the trial transcript also shows that Dr. Paul Janda, not Dr. Snyder, was the neurologist who treated and diagnosed your client's TBI. So tell me what I'm missing. Okay. Of course, Your Honor. So what we're looking at here is that it's partly silence, but the other part is the fact that we do have testimony, testimony from Dr. Janda at trial, that in fact he had conferred with Dr. Snyder about this and that Dr. Snyder had found evidence, objective evidence, in an MRI of the TBI. When he had been doing his treatment. That is what we're saying that equates to is simply enough evidence to take this and go under the Scotland v. Hill standard and say, this is what plaintiffs alleged, this is what they said they were going to prove for their offer of proof. That's what we have that for. But under the Scotland County v. Hill decision and all the decisions in the over 100 years since then, in those rare occasions when an offer of proof is offered but rejected, you have to take what they said the offer of proof would contain as the truth on appeal because just like we would if I, as the appellant, had failed to include essential information in the record on appeal, you would reject the appeal because I'm the party who has the power to put that in, so you do not want to encourage me to exclude evidence in order to benefit my case. And this is the same principle applied in the other way, in the way that it rarely needs to, in that when we go to the district court, the district court is refusing the offer of proof. They're blocking us. We're trying to put this in the record and they're blocking us from doing it. So this policy makes sure that by doing so, the party keeping the evidence out of the record isn't benefiting by making themselves unappealable. But this is, if your honors are concerned, there's Scotland v. Hill. Scotland County v. Hill is the original case from, I think, 1884 from the Supreme Court, but there's countless cases since then reinforcing that idea. Obviously, it's not a situation that comes up a lot because most courts will simply allow an offer of proof. But in this case, we are allowed to do that because we were blocked from being able to put that up there. So every case since then has said we treat that as what was alleged would be shown in the offer of proof is treated as proven when we're evaluating it on appeal. So that silence to the degree that it wasn't proven, we do have that on our side. I think the difficulty for you is that the standard is very high here, given the district court's wide discretion to impose Rule 37 sanctions. So you have to be able to show that it was an abuse of discretion. I think the delta between the case that you're citing that says that courts may permit this offer of proof to make up for prior lack of disclosures with respect to this evidence, I'm not sure how we get to the abuse of discretion finding that's necessary to square the cases that you're citing with the cases that give the district court wide latitude to do what it did. Well, I understand, Your Honor, but here we're not really talking to where we reach the discretion. Under Liberty Insurance v. Brodeur, under R&R Sales, it's specifically stated that applying the wrong legal standard by itself meets the abuse of discretion standard. And in this case, the wrong legal standard was applied because it is undisputed that an expert report is not required from a non-retained treating physician. But only if he's testifying about matters within the scope of his treatment. If he's going to go opine on other things, then he does have to be disclosed as an expert with a report, right? Correct. But we're not required to prove that he wouldn't have. There's no basis to conclude that other than the other side saying he would. There's no evidence of that. And this was a bench trial, mind you. So if he went up there, first of all, they could have taken an offer of proof and talked to him about what his scope was. The judge could have told him, be sure to stay in your scope, etc. Even beyond that, if he went up and actually testified, there's no jury that's going to be tainted. If he goes outside the scope, Judge Mahan, I trust, would have not hesitated a moment to tell him to stay in his scope and stop questioning that went outside there. But again, that's not our burden here. There's no requirement we prove what he would not have testified to. That was simply an allegation, an allegation with no basis, because no one has a crystal ball to protect the future. We never said we are going to go outside the scope. All of our testimony repeatedly argued to the judge, we are going to stay within the scope of his treatment. So it was not disputed in the answering brief that that was an error, that a treating physician is not required to file an expert report as long as he stays within his scope. And the court at that time, if you look at the transcript, they did not base it on anything other than the mistaken belief that there was not a difference between a retained expert and a non-retained expert. So we're looking at an error there, and it's an admitted one. And, excuse me, so what we're doing is applying the wrong legal standard. We're also, under the Liberty Insurance v. Brodeur and R&R sales, we're further, if we're going to issue Rule 37 sanctions to the extent we are excluding a witness, we have to do, as a mandated effort, we have to go through the evaluation of what was the testimony. Was the failure to disclose harmful? Was the failure to disclose justified? And then do the evaluation of, is this exclusion going to be effectively case-ending? Are we going to make this case essentially lose by excluding this? And then, if that's the case, they're required to do another evaluation as far as the willfulness justified and that type of thing. None of that was done, and Liberty and R&R sales both say that that is, you know, that is reversible error just to exclude a witness without doing that evaluation. No such evaluation was done. No evaluation at all was done. It was simply stated that no disclosure was made, he's an expert, he's out. And it's, I think it's fairly clear that this is harmful error because if you look at the FFCL, over and over, it says no objective evidence, no objective evidence supporting all this. This was the only objective evidence that him pointing to MRI evidence of these injuries, that was the only objective evidence that was going to be there. And under Scotland, we have to presume that what we're saying it would be was the case. So then it seems like the gap in the record is not what would he have testified about, because in order to establish that the exclusion was prejudicial, like you have to make the claim that you just did about what he would have testified about. So the question is, what's the evidence that that was within the scope of what his treatment was? And we have some of the treatment records that don't say, I mean, this is sort of going back to the point Judge Desai was asking about a while ago. I'm still not sure how do we know that that really was within the scope of what he would have done. Under Scotland County v. Hill, we have to assume that it is. The rule there is when if in the rare cases when an offer of proof is refused, only in these rare cases, in those cases what we say that it was going to contain, they have to take that, because the court blocked any other ability for the reviewing court to know what would have been there. And the court, the party that offered the evidence and tried to get it in there, shouldn't be punished for the other party keeping it out. So is it your position that Dr. Snyder did treat your client for a traumatic brain injury? Your Honor, I actually don't know. It's not in the record. Well, I mean, so, well, okay, it's not in the record and you don't know are two different claims. And you're saying both of those things are true. I understand, Your Honor. I wasn't the trial counsel. I do know that it was alleged at trial that he was. And that's all I could say to that. I would like to reserve my remaining time for rebuttal. All right. Thank you, counsel. Hey, police court. Richard Thomas Colon on behalf of the United States. I believe that Your Honor has already kind of picked up on what this case is really about. There's really three prongs that I think we need to discuss. The first is that damages the award that Judge Mahan gave and decided not to give us with the discretion of the trial court. The second prong here is that the exclusion of Dr. Travis Snyder, who's a neuroradiologist in the Valley here, was appropriate because he was not disclosed as an expert and was brought to the attention of the United States during trial. And the third is that if you look at the trial record and its completeness, certainly there's nothing that would warrant any kind of remand or reassignment. And I'm happy to take the court's questions, or I can kind of delve first into damages or Dr. Snyder's exclusion. I suppose I would just say in terms of what counsel responded to initially, he was just giving kind of a recast of how the accident occurred. It should be noted that there was no biomechanical engineer here. The airbags didn't deploy. Ms. Clemmons denied treatment at the scene. And there's no indication in the record that the trial court did not take into consideration the subjective injuries or the complaints that Ms. Clemmons made during the plaintiff when they put in their case in chief. It should be noticed that I really think what this case is about is that you can't just generically and in a boilerplate, unhelpful way disclose somebody as a treater when they, and that's being generous saying treater, when they had a very limited treatment of Ms. Clemmons, the entire record that went two and a half years after the accident. The accident was December 11, 2015. The treatment was in March of 2018. That's two and a half years later. And it was not just review of an image, but it was essentially kind of like a needle aspiration for the left shoulder. There was never any treatment that Dr. Snyder conducted in looking at the scans or for traumatic brain injury. I thought it was a little bit interesting during the presentation, to your honor, that counsel would suggest. I don't exactly know what Dr. Snyder said. If you look clearly at both the trial record and then, of course, the briefs here, they try to say, well, we weren't allowed an offer of proof, but I can't tell you whether or not he would have actually commented on traumatic brain injury. Well, that's exactly what they're intending to do is basically say he had a conversation with Dr. Jander, who was the treater neurologist who eventually changed his mind at trial, and that Dr. Snyder would actually go against the findings that were of the brain scans done at SimonMed, against his former partners to include Dr. Kavanaugh and Dr. Orison. I think the law is pretty clear, both under Rule 26, that if he was going to do that and come in and testify as a medical causation expert regarding traumatic brain injury, then that should have been disclosed to the United States, and it was not done so. What occurred at trial was trying to basically jam and shoehorn in Dr. Travis Snyder as a neuroradiologist to comment on what he now found was a structural abnormality, when there was no evidence of structural abnormality on any MRI of Ms. Clemens on any brain scans. The other thing I just want to mention real quick, Your Honor, is that the Liberty case, actually I think I had mentioned in my brief, has no applicability whatsoever. It was a fact witness and involved initial disclosures, and I think as Judge Desai, Your Honor, pointed out, there is complete silence here. Basically what happened was the district court judge was very tempered and measured. He took the arguments from trial counsel at trial. He reviewed the decision by magistrate judge over lunch, came back, explained his reasoning. The objection from the United States was they're intending to have this person opined as an expert. He was never disclosed as an expert. He's limited treatment, and myself and the United States trial counsel did amend our objection to say we're happy to have Dr. Snyder testify as a precipient witness, but only about his limited treatment in the arthrography, fluoroscopic thing he did in the left shoulder in 2018. The other thing I would just say is that I think that the appellate makes some commentary about the FFCL in a brief line. I think it's pretty clear that that was not outcome determinative. The jury instruction Nevada indicates that there's no fixed standard. A fair reading would be that Judge Mahan, again, has wide latitude and discretion, whatever amount he wants to award for pain and suffering or any amount that he doesn't want to award for pain and suffering. And if there's no fixed standard, then, of course, putting your FFCL basically a rationale or basis for why you're awarding zero is appropriate. And without any questions, I think I'm done. It appears not. Thank you, counsel. Thank you, Your Honor. Thank you. Thank you, Your Honors. My time is short, so I'm just going to race through a couple points. First, I do want to remind the court that there is another separate, regardless, independent basis of reversal in the fact that zero damages were awarded despite the fact that injury and pain and suffering were found that found to be caused by the accident. So this by itself should be reversible in the fact that he found pain and suffering. He found pain happened from the accident and an injury from the accident but gave zero pain and suffering. And that is because of finding, excuse me, conclusion of Law No. 15 where he stated he believed Paul Hirsch's imperial palace required him to award zero damages in the absence of objective evidence, which is not what Paul says. I would also like to point out the government, most of what they are saying about sufficiency of disclosures is new arguments of fact on appeal, and those should be treated as waived arguments. And that under Hazel v. Crowfoot, an award of zero damages when there is an obviously no injury, that by itself is overturnable, or excuse me, reversible. So we respectfully do request reversal and for reassignment on remand. Thank you, counsel. Thank you to both counsel. The next case on calendar for argument, United States SEC v. Grisby, has been submitted on the brief. That completes our calendar for the morning. We are in recess until 9.30 a.m. tomorrow at University of Nevada, Las Vegas, Boyd School of Law. Is this good for recess? Thank you.
judges: RAWLINSON, MILLER, DESAI